IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID V. FORSTER,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

1:11-CV- 03139 RE

OPINION AND ORDER

REDDEN, Judge:

Plaintiff David Forster ("Forster") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits. For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for further proceedings.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1969, Forster completed high school, and has worked as a roofer and in construction. Tr. 26, 217-18. In April 2008, Forster filed applications for disability insurance benefits and SSI benefits, alleging disability since October 31, 2000, due to a broken back, right ankle problems, high blood pressure, sleep apnea, heart attack, and stroke. Tr. 171. His applications were denied initially and upon reconsideration. At a June 2010 hearing, Forster amended his onset date to November 30, 2007. An Administrative Law Judge ("ALJ") found him not disabled in an opinion issued in July 2010. Forster's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Forster had the medically determinable severe impairments of degenerative disc disease of the lumbar and cervical spine, right ankle arthritis, and depression. Tr. 20. The ALJ found that Forster's impairments did not meet or equal the requirements of a listed impairment.

The ALJ determined that Forster retained the residual functional capacity to perform a limited range of light work with the following limitations: can sit for 8 hours in an 8 hour workday, stand for 1 hour, and sit for 30 minutes at a time for a total of 3 hours and 90 minutes, respectively; can operate foot controls with the right foot occasionally; can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds, cannot be exposed to unprotected heights; can occasionally operate a motor vehicle; cannot withstand greater than frequent exposure to moving machinery; and is limited to simple, routine, repetitive tasks with no greater than a reasoning level of 2. Tr. 21.

The ALJ found that Forster was not able to perform his past work, but could perform jobs such as table worker, hand stuffer, and addresser. Tr. 26-7.

The medical records accurately set out Forster's medical history as it relates to his claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Forster contends that the ALJ erred by (1) failing to articulate appropriate reasons for finding him not fully credible; (2) improperly weighing the medical evidence; (3) failing to find that his impairments met or equaled in severity a listed impairment; and (4) failing to submit a complete and accurate hypothetical question to the Vocational Expert ("VE").

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246

3 - OPINION AND ORDER

F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Id.* at 1282.

The ALJ found that Forster's allegations as to the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the RFC assessment. Tr. 21-25. The ALJ properly noted multiple occasions when Forster made inconsistent statements with respect to his illicit drug use. Tr. 393 (December 2006 seizure, urinalysis positive for methamphetamine); 493 (September 2008 Forster reports he quit drinking in 2003 but smells of alcohol). The ALJ found that Forster later reported his seizure as stress related and did not relay that he was abusing methamphetamine at the time. Forster argues that this incident does not adversely affect his credibility, and that his alcohol and methamphetamine

4 - OPINION AND ORDER

use were stress related. Regardless of how that incident is characterized, the ALJ had clear and convincing reasons to find Forster less than fully credible. A claimant's inconsistent statements are a specific and convincing reason to find him less than fully credible. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ noted that Forster missed appointments, failed to act on medical referrals, and violated his pain contract. Tr. 339, 615, 442, 650, 476. This is a valid reason to find Forster less than fully credible. The ALJ's determination that Forster is not fully credible is supported by substantial evidence.

## II. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

### A. Rita Sullivan, Ph.D.

Dr. Sullivan conducted a Psychodiagnostic Examination of Forster in September 2008. Tr. 489-98. She reviewed a Psychological Evaluation conducted by Dr. Villanueva in June 2007, and some medical records. Dr. Sullivan administered the Depression Adjective Check List, the

5 - OPINION AND ORDER

Zung Self Rating Depression Scale, the Beck Depression Index, the Beck Anxiety Index, Trail Making Tests form A and B, a Mental Status Examination, and conducted a structured clinical interview.

Dr. Sullivan noted that Forster was appropriately dressed and groomed, and his "speech was pressured in a dramatic fashion as if he was struggling with pain. He had a faint odor of alcohol about him." Tr. 490. Dr. Sullivan stated that Forster "provided a very vague history," and was divorced in 2001 after he lost his business and broke his neck when he fell off a mechanical bull in a bar. Tr. 491. He had surgery on his neck and resulting pain and restricted range of motion. Forster reported a broken ankle which required surgery, and which causes constant pain. He reported sleep apnea requiring a CPAP machine. Tr. 492. Forster stated that he had a heart attack "early this year." *Id.* Dr. Sullivan noted that Dr. Villanueva's report contained the statement that Forster reported he had had two heart attacks and a stroke. Dr. Villanueva's report is not in the record before this court.

Dr. Sullivan refers to a 2003 substance abuse assessment which is not in the record before this court, and Dr. Villanueva's report, and concludes "Mr. Forster is clearly minimizing his use of substances and their consequences, given that at the very least, he reports he was intoxicated when he broke his neck." Tr. 494. Forster was "very unclear and very vague" about his daily activities, stating that he sleeps on and off through the day, watches television, and looks out the window. Tr. 496. He can no longer play guitar because of the condition of his fingers from roofing and back problems. *Id.*

On the Trail Making Tests his scores "suggest that he could be suffering from organicity." *Id.* Other tests indicated severe depression and severe anxiety. Dr. Sullivan diagnosed

6 - OPINION AND ORDER

Undifferentiated Somatoform Disorder, Alcohol Dependence, Cannabis Abuse by history (Dr. Villanueva 2007), Amphetamine Dependence in full sustained remission by client report, and Cocaine abuse in full sustained remission by client report.

Dr. Sullivan concluded:

> Mr. Forester [sic] has a history of alcohol and other drug abuse which he is no doubt minimizing. Supporting this conclusion is that he has received a DUII and had a seizure which might have been secondary to alcohol withdrawal. There is documentation in the record that he under reported his use of narcotics as he has a history of overusing them. He has a history of methamphetamine and cocaine abuse as well.
>
> It is recommended that Mr. Forester [sic] seek an updated substance abuse evaluation to include a review of pain medication use. The feasability of using non-pharmacological pain management techniques should be evaluated, given his history of substance abuse which includes the overuse of narcotics. He also has secondary gain involved in maintaining his symptoms relative to procuring narcotics and maintaining a lifestyle in which he is required to do very little.
>
> Mr. Forester's [sic] physicians should determine how disabling his ankle, back and neck conditions are, as well as any cardiac conditions he might have. Clearly he is less active than one would expect, given that he was helping his friend move "stuff" after he was unable to work because of ankle and neck pain.

Tr. 497-98.

The ALJ cited Dr. Sullivan when he found that Forster had moderate difficulties with concentration, persistence, and pace. Tr. 21. The ALJ summarized Dr. Sullivan's opinion at length. Tr. 24.

Forster argues that the ALJ erred by relying on Dr. Sullivan's opinion because Dr. Sullivan relied upon reports not in the current record. Forster points to Dr. Villanueva's statement that Forster's seizure "might have been alcohol related." However, the facts that Dr.

7 - OPINION AND ORDER

Sullivan attributes to Dr. Villanueva appear elsewhere in the record, as Forster himself points out. Tr. 387. Moreover, it does not matter what caused Forster's seizure because he is not asserting any functional limitations resulted from that seizure.

Forster argues that Dr. Sullivan's test results contradict her conclusion because she failed to diagnose depression or anxiety. But anxiety and depressed moods are very common in Somatoform Disorders. *See, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*(4th ed.1994-revised), p. 486-87. The ALJ properly found that depression is a severe impairment. Tr. 20. The ALJ properly weighed Dr. Sullivan's opinion.

### B. Avanish Ramchandani, M.D.

Dr. Ramchandani examined Forster in March 2010. Forster reported neck, back, and right foot pain, as well as hypertension and heart attacks. Tr. 655-65. Dr. Ramchandani reviewed records of sleep disorder, Rogue Valley records, and Community Health Center records, "which all state mild degenerative joint disease, no definite heart attacks per records and electrocardiograms." *Id.*

Forster reported that he could not put his shoes on, that he did not do much during the day, that he could ambulate for five minutes before stopping, and that he did dishes and watched television. Tr. 655-56.

Dr. Ramchandani observed that Forster was "able to take off and put on his shoes easily. He is able to get easily on and off the exam table. He is able to walk comfortably during the exam." Tr. 656. Dr. Ramchandani diagnosed right ankle fusion, with minimal mobility of the right ankle, neck pain, post C6 fusion and complex fracture, and facetogenic low back pain bilaterally. He opined that Forster would be able to stand and walk less than two hours in an

8 - OPINION AND ORDER

eight hour workday, sit up to eight hours in an eight hour workday, and lift or carry 10 pounds frequently and 20 pounds occasionally. Tr. 659. Dr Ramchandani found that Forster should not frequently climb, balance, stoop, kneel, crouch or crawl, and that he was limited to only occasionally going to heights and operating heavy machinery. *Id.* However, Dr. Ramchandani also checked boxes indicating that Forster was able to stand for a total of three hours in an eight hour work day. Tr. 661.

The ALJ noted Dr. Ramchandani's opinion and gave it substantial weight. Tr. 25. The ALJ stated that the opinion was supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Id.*

Forster argues that the ALJ erred by giving Dr. Ramchandani's opinion greater weight than that of his treating physicians "as summarized and cited above." Plaintiff's Brief at 32. Counsel cites 26 pages of summaries of and quotes from medical records, but does not identify which treating or examining physician identified additional specific functional limitations.

Moreover Dr. Ramchandani conducted the most comprehensive orthopedic examination in the record, with exertional and postural function testing. Tr. 656-58.

The ALJ adopted Dr. Ramchandani's opinion, except that the ALJ found that Forster could stand or walk for a total of three hours in an eight hour workday. Tr. 21. The ALJ did not recognize that Dr. Ramchandani's opinion contains a contradiction Tr. 25. This point is critical because the Vocational Expert testified that a claimant unable to stand or walk for over two hours in an eight hour workday is not employable. Tr. 84-85.

///

///

## III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

///

///

10 - OPINION AND ORDER

The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguities in the medical evidence. *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008).

Accordingly, this matter is remanded for further proceedings in accordance with this Opinion and Order

IT IS SO ORDERED.

Dated this 7 day of November, 2012.

JAMES A. REDDEN
United States District Judge

11 - OPINION AND ORDER